IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

BRIAN WATSON,

       Plaintiff,
v.

LAURA ELSADEN,

       Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Brian Watson ("Mr. Watson") through counsel, Jones & Keller, P.C., respectfully submits this Complaint and Demand for Jury Trial against Defendant Laura Elsaden ("Defendant"), and states as follows:

### NATURE OF THE ACTION

1. Mr. Watson owns property in a prestigious Colorado mountain dude ranch community, having made an investment of more than $7 million to be there, followed by at least $50,000 of Homeowner's Association, special assessments, property taxes, and related payments each year.

2. One of the primary purposes of Mr. Watson's association with the dude ranch is cultivating his business and professional relationships – hosting business associates, commercial real estate brokers, owners, investors, and connecting with the many other reputable businesspeople who attend the ranch as guests or who are fellow owners of property. In fact, Mr. Watson and his company have hosted an annual retreat at the Ranch for all his former 40

1

employees plus their significant others and children and Mr. Watson has also hosted an annual retreat for his company's top business and relational contacts consisting of approximately 75 people from throughout the world.

3. Laura Elsaden has destroyed Mr. Watson's investment, opportunities, and reputation by maliciously spreading lies about Mr. Watson and his family including calling him a "criminal," and stating that Mr. Watson frequents prostitutes.

4. There is no doubt Defendant knew these statements were false when she made them and that she acted with malice in an effort to ruin Mr. Watson's reputation, and destroy his opportunities and relationships, which may have been occurring for several years per recent discovery by Mr. Watson. In a recent conversation with Defendant, Defendant yelled out to Mr. Watson for anyone to hear that "you should just move away" indicating that she may also be using subterfuge to slander Mr. Watson's name and reputation thus making the Ranch environment uncomfortable and hostile to Mr. Watson, in an effort to make him move away from the community he has been a part of for almost two decades.

5. The law permits Mr. Watson to protect his name, reputation, and business from unjustified invasion and wrongful hurt reflecting our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty.

6. Ending false, defamatory and hostile campaigns like the one Laura Elsaden has engaged in against Mr. Watson, especially when it was unprovoked by Mr. Watson, is the cornerstone of preserving and protecting human dignity at the root of our system of justice.

7. Laura Elsaden must be held accountable for her slanderous and defamatory statements and the destruction of Mr. Watson's name, reputation, business, and business prospects.

## THE PARTIES

8. Plaintiff Brian Watson is an individual who is a resident of Colorado.

9. Defendant Laura Elsaden (aka Laura El-Saden, aka Laura Balfrey) is an individual who, upon information and belief, is a resident of Illinois. Defendant may be served at her residence at 699 Locust Street, Winnetka, Illinois 60093, or wherever she may be found.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has diversity jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

11. Venue is proper in this Court, pursuant 28 U.S.C. § 1391(b)(2) because the incidents giving rise to the causes of action occurred in the State of Colorado.

12. Because Defendant circulated slanderous and defamatory statements concerning Plaintiff within this state, this Court also has jurisdiction over this matter under the U.S. Supreme Court's decision in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984).

## GENERAL ALLEGATIONS

13. For approximately 105 years, the approximately 8,500 acre C Lazy U Ranch in Granby, Colorado has been serving as a premier, luxury dude ranch for discerning travelers and guests.

14. The C Lazy U Ranch boasts an all-inclusive resort for approximately 100-125 guests at a time, with the Ranch being full or nearly full throughout the year, featuring luxury accommodations, gourmet dining, a spa, and a variety of dude ranch activities including horseback riding, fly fishing, horse drawn sleigh rides, sledding, trap shooting, and more.

15. Conde Nast has named C Lazy U Ranch one of the top 10 resorts in the world for

3

the past few years and, in 2018, it was named the best resort in Colorado.

16. C Lazy U Ranch was selected as a winner of Oprah Daily's inaugural 2024 Hotel O-Wards; Wine Spectator Award of Excellence for the ninth year in a row; top 500 Hotels worldwide, by Travel+Leisure; two Top Ten Awards by USA TODAY's 2023 10 Best Readers' Choice Awards; and many more.

17. While many people visit the ranch from all over the world, including top businesspeople and investors from both the United States and abroad, many other people choose to purchase a lot at the Ranch to build on and become a "Member" of C Lazy U Ranch.

18. Mr. Watson started visiting C Lazy U Ranch approximately 17 years ago as a Guest.

19. In 2014, Mr. Watson bought an undeveloped land parcel at the C Lazy U Ranch for $1,250,000 to build a family home and become a Member at the Ranch.

20. In 2019, Mr. Watson began constructing a home on his lot at C Lazy U Ranch.

21. Mr. Watson spent approximately $6 million to build his home on the $1.25 million land parcel.

22. Mr. Watson pays approximately $31,000 per year in HOA dues and Member assessments to remain part of C Lazy U Ranch.

23. Mr. Watson and his family have enjoyed going to events at the C Lazy U Ranch, mingling with the other Members and Guests at the Ranch for many years.

24. Mr. Watson bought his lot and built his home, in large part, to conduct business and to show hospitality to investors, commercial real estate owners and tenants, real estate brokers, lenders, prospective business associates, family, and friends.

25. On Friday evening, July 5, 2024, the C Lazy U Ranch hosted a dance in the dance

barn for the owners and guests.

26. The dance was attended by property owners at the Ranch, as well as an untold number of guests and a group of employees of the Ranch, including a manager.

27. Defendant Laura Elsaden was at the dance.

28. At some point during the evening, Defendant approached a guest of Mr. Watson whom she did not know. After this encounter, which was very unsettling to the first guest, the guest's sister approached Ms. Elsaden regarding the comments she had made, at which time Defendant began making defamatory, slanderous, and false statements about Mr. Watson and his family to Mr. Watson's guest, and third parties in her vicinity. Even after the guest left her presence, they later overheard Defendant continuing to make defamatory, slanderous, and false statements about Mr. Watson in the restroom, for potentially even more people to hear.

29. Defendant falsely stated that Mr. Watson is "a criminal."

30. Mr. Watson is not a criminal and has no criminal record, nor has he even been convicted of a crime by any government agency or judicial court.

31. Defendant falsely stated that Mr. Watson has had numerous "relations" with "prostitutes."

32. Mr. Watson has never had relations with a prostitute.

33. Defendant knew these statements were defamatory, slanderous and false or made the statements with reckless disregard for their truth.

34. The statements Defendant made were published to at least five people but Defendant herself has admitted to at least seven people.

35. Upon information and belief, many more people than seven heard the false statements made by Defendant about Mr. Watson, and it is believed that Defendant may have been

making similar statements prior to the dance for several years.

36. Upon information and belief, at least three of the people Defendant made these false statements to were employees of C Lazy U Ranch. Her actions were also reported to a C Lazy U Ranch manager, who was on duty at the time of the dance.

37. Mr. Watson's reputation has been damaged by Defendant's malicious and false statements.

38. Given the negative, slanderous, and defamatory talk initiated by Defendant, Mr. Watson has had to distance himself from Member gatherings and events, and use and enjoyment of the Ranch.

39. In addition to the Members, the Ranch hosts people from around the world, including top businesspeople, commercial real estate owners, lenders, and investors. Negative statements made by Defendant in front of these people would have an enormously negative impact on Mr. Watson's business, investments, social standing, and ability to enjoy the Ranch, among other things.

40. Mr. Watson does not feel comfortable or safe bringing his family, business contacts, associates, relationships, and friends, to C Lazy U Ranch after Defendant made these false statements about him in front of other Members, Guests, and employees of C Lazy U Ranch, especially when Defendant took it upon herself to confront these guests she did not know, and share false statements about Mr. Watson even though the guests did not ask for her input, and in fact informed her she was not correct and asked her not to share them.

41. Mr. Watson is afraid to invite friends and business associates to the C Lazy U Ranch given that they could be approached by Defendant or the others who would repeat the defamatory, slanderous, and false statements made by Defendant and cause Mr. Watson additional

financial, relational, emotional, and psychological harm.

42. Mr. Watson has suffered severe emotional and psychological distress from the defamatory statements made by Defendant about him and how those statements have affected his ability to enjoy the C Lazy U Ranch.

## FIRST CLAIM FOR RELIEF
### Defamation

43. Mr. Watson incorporates all foregoing allegations as though set fully herein.

44. On or about July 5, 2024, Defendant made the defamatory statement described herein at the C Lazy U Ranch in Granby, Colorado.

45. Those statements were and continue to be materially false.

46. The statements clearly concern Plaintiff Brian Watson.

47. The statements were published to third parties with actual malice.

48. Defendant's actions caused actual or special damages.

49. As a result, Plaintiff Brian Watson has suffered economic and non-economic damages in amounts to be proven at trial, though they are estimated at $100 million plus additional damages as a Court and/or jury may award.

## SECOND CLAIM FOR RELIEF
### Permanent Injunctive Relief

50. Mr. Watson incorporates the allegations in Paragraphs 1-42 of this Complaint as if fully set forth herein.

51. Once a final determination has been made that Defendant's statements at issue are defamatory, Mr. Watson seeks a permanent injunction prohibiting Defendant from repeating the defamatory speech. *Allstate Insurance Company v. Cruz*, 2024 WL 2058859 *8 (D.Colo. 2024) (citing *Wagner Equip. Co. v. Wood*, 893 F. Supp. 2d 1157, 1161 (D.N.M. 2012) (collecting cases);

and *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 124–25 (Del. Ch. 2017)).

52. Upon information and belief, Defendant has not stopped repeating and publishing the false and defamatory statements described herein.

53. As a result, Mr. Watson continues to be injured in his reputation and will continue to be after a trial, if Defendant is permitted to continue repeating the defamatory statements.

54. The injuries Mr. Watson will continue to suffer as a result of Defendant's defamatory statements are irreparable, and any remedy for the injuries available to Plaintiffs through a future award of damages would be inadequate.

55. Mr. Watson is entitled to an Order of this Court permanently prohibiting Defendant from repeating the speech found defamatory in this case, and a sanction of $10 million per occurrence for any time it is broken by Defendant.

## JURY DEMAND

Mr. Watson demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Watson requests that the Court enter judgment in his favor and against Defendant Laura Elsaden and to grant the following relief:

1. Economic damages estimated at $100 million, plus additional damages as the Court and Jury may award, as proved at trial;

2. Non-economic damages at the maximum rate allowed by law;

3. Pre-judgment and post-judgment interest on all such amount at the maximum rate allowed by law;

4. An Order mandating that Defendants immediately stop all defamatory statements described above, and if this is violated a sanction of $10 million per occurrence by Defendant;

5.     Costs, expenses and attorney fees that Plaintiffs have incurred and will continue to incur bringing and maintaining this action; and

6.     Any and all such other and further relief that the Court deems just and equitable under the circumstances.

Respectfully submitted this 20th day of August, 2024.

*/s/ Nicole A. Westbrook*
Nicole A. Westbrook
Jones & Keller, P.C.
1675 Broadway, 26th Floor
Denver, Colorado 80202
Office: (303) 573-1600
Facsimile: (303) 573-8133
Email: nwestbrook@joneskeller.com

*Attorneys for Brian Watson*